## DRAINAGE—CHARGE OF COURT.

8 Dec.<br>607

[Summit Circuit Court, October Term, 1894.]

### *McBride v. City of Akron.

I. Liability of a Municipality in Changing Water Course and Increasing Flow Thereof by Paving and Changing Grade of Streets—Errors of Law in Court's Charge as to Such Liability.

In an action brought against a municipality by a land owner thereof to recover damages, alleged to have been caused by changing the course of a stream of water and increasing the flow thereof, which stream crossed the lands of plaintiff, the petition substantially alleged: 1. That the defendant, in grading its streets, increased the territory that discharges its water into said stream. 2. That the defendant, in grading, paving, and guttering its streets in the vicinity of said stream, diverted the water in that vicinity from its natural drainage into sewers, and caused it with other additional waters, to flow into said stream and upon the land of plaintiff, to his damage. 3. That certain

---

* This decision is cited as authority in Dill v. Oglesbee, 8 Dec., 226.

residents of said corporation, with the consent, and at the direction of defendant, drained their sewage and other filth into said stream, and allowed it to flow down on to the lands of plaintiff. 4. That the defendant diverted the course of said stream from where it originally flowed, and caused it to flow through a large pipe on, but not across, the lands of plaintiff, and there left it to discharge its accumulation of filth, water and dirt upon plaintiff's said land.

The defendant denied all the allegations of the petition but alleged in its answer, that the plaintiff had consented to the location of said pipe upon his premises, and that it was left there in such condition with his consent and advice.

The plaintiff replied that he gave his consent for the location of such pipe on his lands upon the express condition, and no other, that said pipe should be extended entirely across his land so that said water and filth would not be discharged thereon. At the trial of such action: *Held*, 1. It was not error for the court to instruct the jury, that the burden of proving any new matter alleged in the reply, was on the plaintiff.

2. It was error for the court to instruct the jury, that the alleged creation of such new channel, distinct from the old one, was the only allegation that charged upon the defendant the exercise of powers that it had no right to exercise.

3. It was error for the court, in its charge to the jury, to assume that the plaintiff had consented to the laying of said pipe and the making of said improvement just as it had been left, the pleadings and proof not showing any such consent.

4. It was error for the court to instruct the jury, "that it being admitted that the new or substituted channel was made with the knowledge of the plaintiff, the plaintiff would be subjected to all the incidents that ordinarily attached to the natural stream before such substitution, and for injuries resulting from such incidents would not entitle the plaintiff to damages from the city, because of the changed location of said stream."

5. In such case the defendant is a proprietor, and had a right to drain its lands and increase the flow of water, that naturally found its way into said stream, by carrying it into a ditch, or otherwise, if that was the natural place for the water to go, and it was in the habit of flowing there, but the defendant, as such proprietor, would be liable to the plaintiff for all damages caused by increasing the servitude of the land below, by making the overflow of water greater than it originally was, or by making an overflow where there was originally no overflow, and the plaintiff would not be bound to anticipate any injury therefor, until it came to him.

2. FOR OTHER ERRORS OF LAW IN CHARGE OF COURT, SEE OPINION.

3. EFFECT OF GIVING TO THE JURY A CURATIVE REQUEST TO CHARGE WHERE THE MAIN CHARGE HAS BEEN MISLEADING.

Where the court's charge proceeds all the way through so that it is misleading to the jury, a request, that is given to them after they have retired, and that cures to some extent the errors of the main charge, will not prevent the defeated party from having a new trial.

CALDWELL, J.

Lucius McBride owns a tract of property lying north of West Market street. West Market street does not touch this land upon the south side, but Aqueduct street, which goes off at an acute angle from West Market street forms the west boundary of the land in question; and this land lies some six or eight feet lower than the present grade of West Market street. This being the situation, the petition in this case avers that coming down south of Market street, there is an open waterway, a running stream, and that this running stream passes under West Market street, and that originally, after passing under West Market street, it went down Aqueduct street, or went along Aqueduct street for two or three hundred feet, where it crossed Aqueduct street in a culvert, and after it had crossed, then flowed over a portion of the land of Mr. McBride. The complaint in the petition, may be put under four heads:

*First*—That the city, in grading West Market street, and other streets that open into West Market street, or in that vicinity, and west of this brook or stream

of water, has drained territory into the brook that never before drained into it, and therefore has increased the territory that flows its water into this stream.

*Second*—That the city has so graded and guttered and paved its streets in that vicinity, that the territory that naturally flowed its water into this stream now flows its water in through the gutters on each side of West Market street and through the culvert under West Market street, and precipitates the water in greater quantities at times, and much more rapidly into the brook, and thus has caused injury to this property below, through which the stream flows. Note, the petition avers that it is partly on account of the paving of streets the water not being able to find its natural drainage into the sewer, and by making gutters along the streets, and thus gathering the water, and gathering portions of it that before came down Aqueduct street, and throwing that in at the culvert above, and I might include with that, that certain water has been brought down Aqueduct street, and allowed to flow into the old channel, which I have described on Aqueduct street, and thus overflow the land of the plaintiff.

*Third*—That Alexander and Wright, who live south of West Market street, have been allowed to drain their sewage, and their privies, and various filth from their premises into this stream of water, and have been allowed to flow it down and over and upon the premises of the plaintiff; and that this has been done with the consent and with the direction of the city of Akron.

*Fourth*—The last complaint is—and upon this, it will be necessary to notice somewhat the state of pleadings—that when the city carried this water through under West Market street, in making its improvement, it placed a larger culvert under West Market street and then carried it across Aqueduct street and then on to plaintiff's land at that point, some hundred and twenty-five feet from where it before passed on to the plaintiff's land, and that it carried the large pipe through which it flowed this water under Market street into plaintiff's land about fifty feet and there left it to discharge all the accumulations of filth and water and dirt upon his land.

All of these allegations are denied on the part of the city; but to this allegation, the city makes an affirmative allegation in its answer, which is that the plaintiff consented and requested and knew that the city of Akron was carrying this pipe some fifty feet in upon his premises, and left it in the condition it did, with his consent and advice.

A reply is filed, in which it is said that this consent was upon the express condition that this pipe should cross entirely over the plaintiff's property, and it was granted upon that condition, and no other, thus making it almost impossible for the land to be in any way damaged or overflowed.

With these four substantive complaints, the parties went to trial and it appeared upon the trial, the evidence shows clearly, that this assent of the plaintiff, as to the change of the location of that stream, from Aqueduct street on to his premises at another point from where it ever entered before, whatever was done about that, was all done at one time. If the city agreed to carry it clear across, it was at the same time that he gave his assent, so that that was all one transaction, and no after promise.

With this testimony, and other testimony, the case was finally ready for the jury and the court made its charge. A number of complaints are made as to the manner in which the court charged the jury. A great many special exceptions are taken to this charge, and then the claim is made that the charge is misleading. It will be impossible to notice these without reading portions of the charge.

The first complaint is, that the court erred in charging, that as to any new matter set up in the reply, the burden of proving it, was upon the plaintiff. Now, the plaintiff's new matter referred to by the court, could only be, as we read the pleadings, that he did assent to this stream being changed and carried across his land in a large pipe, upon the condition that it should go clear across,

and when the city came, in its testimony, to justify this, it simply showed that he consented to their making the change as it now is, or as it was at the time of the trial, without putting in any part of the testimony as to what he claimed; and then he introduced testimony to show that what he did do, was done upon condition—it was all one conversation, and the arrangement was that the city was to carry it entirely across his land. We don't see any very serious objection to the way in which that was charged.

The next complaint is that in regard to what I shall now read: "The plaintiff goes on and sets out how the city has increased the volume of water, and so forth, and put in its iron pipe, three feet in diameter, the same being put down and laid at a point on said premises about one hundred and twenty-five feet from the old culvert on Aqueduct street, which has been abandoned, and thereby creating a new channel that distance from the old one without any right so to do; and that is the only allegation in the whole pleading, as I construe it, that charges upon the city, the exercise of powers that it had no right to exercise." 

That is equivalent to saying to the jury that the city had an entire right to bring this water down in greater quantities, and greater volume, and that it had an entire right to allow Alexander and Wright to put their sewage and drain it into this stream of water. "That charges upon the city the exercise of powers that it had no right to exercise." That is simply, that it had no right to change this stream. Then the court goes on: "We say to you, that in the exercise of its powers conferred upon it, by the city, rightfully exercised by it, it is not liable for its acts unless it appropriates private property of the owner, to a public use —use of the city. Where it does so appropriate, whether it does so by proceedings legally instituted, or whether it does so by force, or of its own will, where it does subject the property of the individual to a public use, the principle of compensation therefor arises, and the city in that case would be liable to the extent of the appropriation of private property made for the use of the city."

Now, the court from that on proceeds very largely to base its charge upon the ground that if the city has made a grade once, and undertakes to change that grade, that they are then liable to a party who has built his property upon the grade that the city established, and giving the entire law in regard to that matter, and with what the city has said here, that is, "that the charge upon the city the exercise of powers that it had no right to exercise," what would the jury understand by that, as the court explained it? Simply if the city has taken property to change the bed of this stream, that without due process of law, then the city had no power to do that.

Now, the court goes on further to say, in language that is complained of: "The embarrassing point in this case, with the court, arises out of the fact that the plaintiff admits by its reply, that the substitution of the new channel for the old one, was made with his knowledge and with his consent. Now, it is a well recognized rule of law, that to the consenting, there can be no damage." Following out his course still the court says that if any property is taken here without the consent of the owner, that the city has exceeded its powers, and so far as it has exceeded its powers in taking property without consent, it is liable, and the court then uses this consent that was given by the plaintiff in the case, as taken away entirely the liability of the city in that in case of the exercise of that power. And we think the jury would understand the language thus far used, as saying that there can be no liability.

Well, now, the court assumes as existing, a fact that was a main fact in dispute in this case, and that is this: the party claimed that he didn't consent that the city should change the channel upon his land, or change the flow of that water, only upon the condition that the pipe that it was about to put in should go clear across his land; and the city was denying it. It claimed that he consented to have it done just as they left it.

That was an issue in the case, and yet, because the plaintiff in his reply said

that he admitted that he consented that the city change that channel, that therefore he consented, but that consent was given upon the express condition that it should be carried clear across his land in that pipe. The court assumed that he had consented that the improvement should be made just as it was left; but the pleadings don't make any such consent; nor did the proof make any such consent. In fact, if that matter had been submitted properly to the jury, without the comments of the court in his charge that were made, there is not much doubt but what the jury would have found with the plaintiff upon that issue.

The city had brought the pipe there, and laid it down, enough of it, apparently, to complete the carrying of this water clear across his land. And then it was in evidence that some one objected, and it wasn't denied that Mr. Alexander objected on account of the cost, and thereupon the party proposed to Mr. McBride, the engineer proposed to Mr. McBride, that he should get up a petition, and go around and see if he couldn't get enough signers to influence the council to carry it clear across his land, and that was done, and the petition is in evidence. With all that, we think the jury certainly, if they had been left untrammeled by the court in this matter, would have decided that question the other way from what they did decide it.

Again, on page 169 of the charge the court says: "We therefore say to you that, it being admitted that the new or substituted channel was made with the knowledge of the plaintiff, the plaintiff would be subjected to all the incidents that ordinarily attached to the natural stream before such substitution, and for injuries resulting from such incidents, would not entitle the plaintiff to damages from the city, because of the changed location of said stream."

Now, the jury can understand the first part of that no other way, because it states two propositions, and the first proposition stated there, can mean nothing else; that it being admitted that the new, or substituted channel was made with the knowledge of the plaintiff, the plaintiff would be subject to all the incidents that ordinarily attached to the natural stream before such substitution. That is equivalent to saying to that jury, if this city had permitted Alexander and Wright to drain into this stream their privies, and all the filth of their property, and flow it down upon this land before this change was made, that he having submitted to it before there was a change in this channel, that after this channel was changed, he cannot now object. That is exactly the shape in which this matter went to this jury. And then he says, he also can't complain for injuries resulting from such incidents, " and for injuries resulting from such incidents, would not entitle the plaintiff to damages from the city, because of the changed location of said stream." That is not the law of this case, as we will show, in passing along upon it.

Now, he comes to another branch of the case: "If the paving of said Market street was reasonably and properly done, with a reference to the drainage of said street, though it did, and would thereby increase the flow of water resulting from rainfall or melting of snow and ice, it would not entitle the plaintiff to recover from the mere fact that such waters were thrown more rapidly upon and over said premises of plaintiff. Nor would the reasonable improvement of streets in the same watershed, in portions of the city where the same were but partially or entirely unimproved, lay foundation for such claim."

The court proceeds upon the theory that if the city has established a grade, that it has a right to go on, and the party who has his land lying in this neighborhood and below that grade, must look ahead and anticipate the rapid flow of the water, and if he wants any damages for that rapidly flowing, and increase of overflow upon his land, then is the time that he must get his damages, and that after the grade has been established and after the damage has really come to him, it is really too late. Well now, the trouble is, the court never seemed to comprehend the law of an open stream, of a flowing stream. A proprietor—and the city is nothing but a proprietor, in this case, has a right to drain his land; and water that naturally flows, or finds its way into a stream, he has a right to in-

crease the flow of that water into that stream, by carrying it into a ditch, or through an underground drain, or in various ways, if that is the natural place for the water to go, and it has been in the habit of flowing there, but the upper proprietor cannot so increase the flow of that water as to go beyond the capacity of the stream, where the water did not before go beyond that capacity, and if he increases the servitude, by doing this, of the land below, by making the overflow greater, or by making an overflow where there was no overflow, there is a liability there, and the party is not bound to anticipate any injury of this kind, until it comes to him.

Now, I still further notice; if the court means here in this charge to say that he cannot complain of any increased flow of the water through and upon his land, in the natural channel, or in the channel of the stream, then the court is right; but the court was very indefinite there to the jury—so indefinite that we think the jury would be most likely to understand, that if the city brought down this water in such quantities, at times, whereas it used to flow slowly, and now it is brought in such quantities that it overflows acres of his land that never overflowed before, that he cannot recover. The court was indefinite.

The court goes right on to carry out this idea, that it had all the way through, in this language: "The plaintiff must be treated as holding and improving his lands with reference to such reasonable use and improvement of the streets of said city, though such improvements result in precipitating more rapidly, the rainfall and deposits from melting snow and ice over said lands in and along said natural channel, or as substituted." Just exactly the same law is applied here, as that a party may anticipate a reasonable grade.

Coming to this matter of Alexander: "The charge that defendant has caused, permitted and allowed Alexander and Wright to construct sewer connections into said stream, whereby filth and the contents of privy vaults are washed down on plaintiff's premises, we will say, that as to this charge, that if the changed or substituted channel across plaintiff's premises as constructed by defendant, did and does not increase such deposits of sewage from Alexander and Wright's premises, the plaintiff cannot recover, because Wright and Alexander may have deposited their sewage upon their premises in and to the natural water course."

That all means simply this, and nothing more—and the jury could not understand it any other way, that if the city directs, because that is the language used here, parties to drain their out-buildings and their privies, into a stream of water, and it is flowing down upon a lower proprietor, and spreading that filth all out over his land, that then, if the city only goes and makes a change in the channel on his land, if it does that, and then he sues for damages, he cannot get any damages, unless the flow over his land in the new channel is worse than it was in the old. And that certainly cannot be law; and it was virtually charging the party right out of court.

On page 171, of the charge, the court says: "If you find for the plaintiff in this case, the damages recoverable would be such sum as will compensate him fully, the actual injury he has sustained, by reason of the wrongful conduct of the plaintiff. His cellar may have been flowed full of material; his premises may have been overflowed to the full extent claimed by the plaintiff, but that is a matter that he must bear, and bear without compensation as against the defendant, unless you find from the evidence that the defendant has been the substantial cause of this injury. It can only be made responsible for such recovery, because of some wrongful conduct on his part, and wrongful conduct that has resulted in injury to the plaintiff. If no greater injury has resulted to plaintiff's premises by reason of the substituted channel than existed before the substitution, though the substitution was made—well, I can't say, without the consent of the plaintiff, in this case, because in his pleading he admitted it was done with his consent, but I will say to you, that unless you find there was substantial injury resulting from the wrongful conduct of the defendant in this case, that resulting in other

injury than that which was incident to the premises before the substitution was made, it would certainly lay the grounds for no greater recovery than nominal damages."

I have said enough about that already. There are two things in there for which this case ought to be reversed, beyond all question. The conduct of the court was this, he says to that jury, that the plaintiff has admitted that this was put on his land there with his consent, and on his land as it is at this trial, or as it was at the time he brought this action—that it was done with his consent, and then he submitted to the jury afterwards the question as to what the contract was between these parties, as to whether Mr. McBride did assent to this, or not; after he has told them this in the charge, that he did positively assent.

I want to notice another matter, on page 172 of the charge: "But we say to you, that for the watershed, the natural watershed, the waters of which pass through the natural channel, over the plaintiff's lands, notwithstanding the fact that the city may have improved its streets, if it did so in a reasonable manner, and the only effect of opening these streets was to precipitate more rapidly the natural fall of water upon this watershed, and so as to temporarily increase the volume of water, and that improvement of the streets was reasonably made, though injury might result to the plaintiff's premises from such enhanced flow of water over his premises, he would not be entitled to recover against the defendant— this could only be within that watershed."

It is claimed that many of these things that I have noticed, were cured by two requests that he refused to the jury—in the first place, the court refused them, and afterwards consented they should go to the jury, and it is said here that these requests, numbers three and four, were given within an hour after the jury had retired for deliberation, and several hours before agreement, the court having refused to give said requests at the time of charging the jury. It is claimed in argument these were sent out to the jury, after the jury were gone, instead of calling in the jury and charging them to the jury. We have got to take a favorable view of this matter, and we think in the language I have just read, we are not to conclude that it was done in that way, but that the court gave them to the jury in the legal and proper manner, and therefore we will not further notice that error.

But charge number three: "If the city changed the watershed, so as to bring down water on to the plaintiff's premises, which did not naturally flow in that direction, and you find the city did so, for these the plaintiff is entitled to recover for such damages resulting therefrom." That is one he sent out, but I think he had charged the law pretty fully on that matter, as to the outlying watershed that did not formerly flow into this stream. We think he got that about right.

The fourth: "If the jury find the city changed the channel of a water course on plaintiff's premises, with the consent and knowledge of plaintiff, and that for said consent, said city agreed to construct a sewer entirely across said premises, and the city in pursuance of such consent constructed its sewer upon said premises, and failed to complete and construct it across the same, abandoning it when constructed less than half way across the premises, and allowing the water to discharge itself at the point to which it was constructed on said premises, and thereby allowing it to discharge and overflow plaintiff's said premises to the material injury and damage thereof, the city in such case, would be liable for such damages as the plaintiff has sustained by reason thereof."

This is the request that was sent out, or was given to the jury, after they had retired; and while it cures to some extent, at least, the errors of this charge, it still don't take away the sting of this charge, in such a manner but that we think the party is entitled to a new trial, and the case is reversed for errors in the charge, for the charge being misleading; it proceeds all the way through upon an entirely wrong theory, and was misleading to this jury, and the judgment will be reversed and the case remanded for a new trial.